UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| KAREN THIEL, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-1216 |
| ) | |
| v. ) | Honorable Robert J. Jonker |
| ) | |
| COMMISSIONER OF ) | **REPORT AND RECOMMENDATION** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On August 4, 2006, plaintiff filed her application for DIB benefits. She alleged a December 16, 2005, onset of disability. (Page ID 248-52).[1] Her disability insured status expired on December 31, 2010. Thus, it was plaintiff's burden to submit evidence demonstrating that she was disabled on or before December 31, 2010. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim for DIB benefits was denied on initial review. On July 25, 2011, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel.[2] (Page ID 92-111). On October 19, 2011, the ALJ issued his decision finding that plaintiff

___

[1]The "Page ID" numbers are the numbers that appear in the upper right hand corner of each page in the court's electronic record.

[2]The Appeals Council vacated an earlier decision by a different ALJ. (Page ID 155-57). No discussion of the vacated decision (Page ID 146-53) is necessary.

was not disabled.  (Page ID 75-87).  On September 21, 2013, the Appeals Council denied review (Page ID 22-25), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for benefits.  She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ "failed to articulate evidentiary support for the Residual Functional Capacity determination as required by Social Security Ruling 96-8p, specifically with regard to the Plaintiff's chronic bilateral carpal tunnel syndrome."

2. The ALJ did not perform a "proper credibility analysis under 20 C.F.R. 404.1529."

(Statement of Errors, Plf. Brief at 2, Dkt. 12, Page ID 449).  I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from December 16, 2005, through December 31, 2010, but not thereafter. (Page ID 78). Plaintiff had not engaged in substantial gainful activity on or after December 16, 2005. (Page ID 78). Plaintiff had the following severe impairments as of her date last disability insured: cervical disc disease, status right shoulder arthroplasty, right median neuropathy, bilateral shoulder pain, chronic bilateral carpal tunnel syndrome, and depression. (Page ID 78). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of

impairments.  (Page ID 78).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant requires the option to alternate between sitting and standing, standing 10 minutes each hour as needed; must avoid ladders, ropes, or scaffolds; may only occasionally climb ramps and stairs; must avoid dangerous or unprotected machinery and unprotected heights; must avoid vibrating tools; and limited to work that does not involve maintaining intense concentration, but can remain on task.

(Page ID 79).  The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible:

> The claimant testified that she could not work due to her impairments.  She said that after working for several years, her arms started to hurt.  She started experiencing numbness in both arms and could not move her shoulders.  She said she experiences pain from the back of her head down to her fingertips in both hands.  She said she is experiencing constant pain with difficulty standing or sitting for long periods.  She experiences pain even with simple tasks around the house.  She said she underwent a carpal tunnel surgery in January 2006 and right shoulder surgery in April 2006.  She received physical therapy with limited relief.  She said she started having problems with her neck, but did not undergo surgery because of medical insurance coverage.  She stated she has difficulty with attention and concentration due to her chronic pain.  She is taking over the counter extra strength Tylenol because she cannot afford pain medications, and she is having difficulty obtaining treatment.  The claimant said she has depression.  She said she received mental health treatment from her family doctor.  She saw a psychiatrist about her depression.  She said her religion is helping her deal with her depression.  She rarely leaves her house due to anxiety and trouble functioning.
>
> The medical evidence records indicate the claimant received treatment for cervical disc disease, status post right shoulder arthroplasty, right median neuropathy, bilateral shoulder pain, chronic bilateral carpal tunnel syndrome, and depression.  She received pain medication treatment and underwent physical therapy.  She reported neck pain that was radiating into both shoulders and numbness in both hands.  On January 30, 2006, the claimant underwent decompression of the right median nerve.  On April 5, 2006, she underwent diagnostic and surgical arthroscopy of the right shoulder, with debridement of the glenoid labrum, rotator cuff, and subacromial decompression.  A June 24, 2006 MRI examination of the cervical spine showed moderate sized posterior disc herniation with extrusion, compression of the thecal sac anteriorly at C3-C4, central spinal canal stenosis at the same level, a left foraminal disc herniation with compression of the existing nerve root in the neural foramen at C6-C7, and bilateral foraminal stenosis at C4- C5.  Then a

November 14, 2006 office visit report indicated the claimant underwent an MRI examination of her neck, which showed a disc herniation at C3-C4 impinging on the thecal sac and impingement on the left neural foramen at C6-C7 (Exhibits 1F, 2F, 3F, 4F, 5F, 7F, 9F, 10F, 12F, 17F, and 18F).

During a February 26, 2008 office visit, the claimant complained of depression with difficulty sleeping, feelings of hopelessness, and tiredness. She had suicidal thoughts of overdosing on Vicodin to end her life. She was prescribed Prozac for her treatment (Exhibit 13F).

The undersigned has considered the claimant's allegations and the medical findings and, giving her the benefit of the doubt, the undersigned has concluded that she can perform light exertional activity. Since she continues to report neck pain, it is reasonable to conclude that she must avoid dangerous or unprotected machinery and unprotected heights and must avoid vibrating tools. Additionally, she must avoid ladders, ropes, or scaffolds. Furthermore, the claimant stated she is experiencing constant pain with difficulty standing or sitting for long periods. Therefore, she requires the option to alternate between standing and sitting at will, standing ten minutes for each hour as needed. Since the claimant testified about difficulty with attention and concentration due to her chronic pain, she is limited to work that does not involve maintaining intense concentration, but the claimant can remain on task.

* * *

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant has severe impairments, but the medical evidence records do not support the level of limitation as described by the claimant. The claimant was able to attend the hearing proceedings closely and fully without any noted distractions or overt pain behavior. She was able to respond to questions in appropriate manner.

* * *

Furthermore, the undersigned considered the credibility of the claimant's allegations and notes that the claimant had described daily activities, which were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. In the claimant's function report, dated October 4, 2006, she reported difficulty with postural maneuvers and difficulty with completing tasks and her concentration. She reported sleep difficulty due to pain, and she would sometimes have to sleep sitting up. She did not handle stress or changes in routine well. She reported being in great deal of pain every day (Exhibit 3E). Furthermore, on the same date, October 4, 2006, the claimant completed a hand function questionnaire. She reported she was having problems with both of her hands,

> including pain, dropping things, numbness and tingling, fingers locking or cramping, night pain, and swelling. She reported difficulty with several activities, including using a pen, typing, using safety pin, opening a jar or a can, holding or carrying a gallon of milk, picking up coins or other small objections, and writing or typing for more than thirty minutes (Exhibit 4E). At the same time, the claimant could tidy up and perform other housework, such as vacuuming and laundry. She would perform personal care and grooming with no need for special help or reminders. She would prepare simple meals. She reported inability to do lawn care or heavy housework as the only thing she was doing before the onset of her impairments. She did not use a brace for her hands. She would go outside every day driving a car or riding in a car alone. She could shop in stores. She could handle her finances. She could follow written and spoken instructions. She would read and watch television. She would spend time with others by visiting or talking over the telephone (Exhibits 3E and 4E). Clearly, these are not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity.
>
> * * *
>
> In summary, the above residual functional capacity assessment is supported by the objective medical evidence, which does not provide a basis for finding limitations greater than those determined in this decision. After careful consideration of the entire record, including the claimant's credibility and the findings of her treating and examining physician and specialists, the undersigned concludes that neither the objective evidence of record nor the claimant's own reported statements or activities could reasonably support a conclusion that she is unable to perform any substantial gainful activity. The undersigned has been generous in giving the claimant the benefit of the doubt with regard to her alleged impairments, but the overall record cannot reasonably support any greater limitation than that listed in the above residual functional capacity.

(Page ID 79-85). The ALJ found that plaintiff was unable to perform any past relevant work. (Page ID 85). Plaintiff was 45- years-old as of her alleged onset of disability, and 50-years-old as of her date last disability insured. Thus, plaintiff was classified as a younger individual through April 26, 2010. On and after reaching age 50 on April 27, 2010, through her date last disability insured, plaintiff was classified as an individual closely approaching advanced age. (Page ID 85). Plaintiff has at least a high-school education and is able to communicate in English. (Page ID 85). The transferability of job skills was not material to a disability determination. (Page ID 85). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question

regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 7,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (Page ID 108-09). The ALJ found that this constituted a significant number of jobs. Using Rule 202.13 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Page ID 86-87).

**1.**

Plaintiff argues that the ALJ did not perform "a proper credibility analysis under 20 C.F.R. 404.1529." (Plf. Brief at 8, Page ID 455). Specifically, she argues that her "file contains several records with objective evidence documenting her severe impairment of bilateral carpal tunnel syndrome and right median neuropathy" and that the ALJ erred by failing to explain "why her allegations regarding her difficulties with handling and fingering [were] not credible." (*Id.* at 10, Page ID 457; *see* Reply Brief at 3, Page ID 471). It is not sufficient for plaintiff to point to "pieces of evidence" on which the ALJ could have based a finding in her favor. Her burden on appeal is much higher. She must demonstrate that the ALJ's factual finding is not supported by substantial evidence. 42 U.S.C. § 405(g); *see Peterson v. Commissioner*, 552 F. App'x 533, 540 (6th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston*, 245 F.3d at 534.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v.*

*Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The hearing transcript reveals that the ALJ gave plaintiff an extensive opportunity to explain why she believed she was not capable of working. (Page ID 97-104). Plaintiff did not testify as to

significant limitations in handling or fingering. Plaintiff's attorney did not elicit any testimony regarding plaintiff's ability to handle and finger. (Page ID 104-06). Plaintiff did state that she had constant pain in her hands and that at times numbness in her arms went "right down into her hands." (Page ID 103). The ALJ considered plaintiff's complaints of pain and numbness. (Page ID 80, 84). In addition, he went beyond plaintiff's testimony and considered the hand function questionnaire that she had completed in October 2006 in connection with her worker's compensation claim,[3] in which she claimed that she was "having problems with both of her hands, including pain, dropping things, numbness and tingling, fingers locking or cramping, night pain, and swelling. She reported difficulty with several activities, including using a pen, typing, using safety pin, opening a jar or a can, holding or carrying a gallon of milk, picking up coins or other small objections, and writing or typing for more than thirty minutes (Exhibit 4E)." (Page ID 84; *see* Page ID 304). The ALJ found that plaintiff's credibility regarding these manipulative limitations was undermined by her ability to "tidy up and perform other housework, such as vacuuming and laundry," "perform personal care and grooming with no need for special help," and "prepare simple meals." (Page ID 84). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ noted that plaintiff "did not use a brace for her hands"[4] and "would go outside every day driving a car or riding in a car alone."

---

[3]During a consultative examination conducted on October 12, 2010, plaintiff related that she had received a settlement on her worker's compensation claim. (Page ID 431).

[4]Use of braces to immobilize the wrists "is the most common from of treatment prescribed for [carpal tunnel syndrome] CTS." *Reed v. Commissioner*, No. 1:13-cv-268, 2014 WL 1266847, at * 4 (S.D. Ohio Mar. 26, 2014). In November 2005, Dr. Snow stated that plaintiff was capable of working 40 hours per week "with CTS splints on." (Page ID 326). Plaintiff last worked in

Plaintiff's ability to use her hands for other activities, such as driving a car, undercut the credibility of her claims of more significant functional limitations. *See Lott v. Colvin*, 541 F. App'x 702, 705 (7th Cir. 2013); *Beavers v. Colvin*, No. 5:13-cv-494, 2014 WL 4443292, at * 8 (E.D.N.C. Aug. 25, 2014); *Burrell v. Commissioner*, No. 07-13930, 2009 WL 799240, at * 5 (E.D. Mich. Mar. 24, 2009). I find that the ALJ gave an adequate explanation of his finding regarding plaintiff's credibility and that his finding is supported by substantial evidence.

**2.**

Plaintiff argues that the ALJ failed to articulate evidentiary support for his factual finding regarding plaintiff's RFC "as required by Social Security Ruling 96-8p." (Plf. Brief at 3, Page ID 450). Specifically, plaintiff argues that the ALJ's factual finding regarding her RFC should have included a limitation on handling and fingering. (Plf. Brief at 3-8, Page ID 450-55; Reply Brief at 1-3, Page ID 469-71). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ found that plaintiff retained the RFC for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant requires the option to alternate between sitting and standing, standing 10 minutes each hour as needed; must avoid ladders, ropes, or scaffolds; may only occasionally climb ramps and stairs; must avoid dangerous or unprotected machinery and unprotected heights; must avoid vibrating tools; and limited to work that does not involve maintaining intense concentration, but can remain on task.

---

December 2005. (Page ID 118, 427). Paragraph 7 of the plaintiff's hand function questionnaire dated October 4, 2006, indicated that she was not wearing wrist braces. (Page ID 304). The medical records that plaintiff submitted in support of her claim do not include any explanation why she was not wearing wrist braces during period at issue.

(Page ID 79). Plaintiff was diagnosed with mild carpal tunnel syndrome in November 2015. (Page ID 326-27). On January 30, 2006, Dr. Schmidt performed a decompression of plaintiff's right median nerve. Plaintiff tolerated the procedure well. (Page ID 333-34, 345). Dr. Schmidt did not impose any restriction beyond a temporary, six-week restriction on plaintiff's use of her right hand during post-surgical recovery. (Page ID 347). In fact, no treating or examining physician imposed restrictions on plaintiff with regard to handling and fingering. An ALJ is not required to include restrictions on handling and fingering in the RFC based on a diagnosis of carpal tunnel syndrome where the claimant's physicians have not imposed such restrictions.[5] *See Irizarry v. Colvin*, No. 1:13-cv-2161, 2014 WL 6879117, at * 13 (N.D. Ohio Dec. 4, 2014). The ALJ did not commit error by failing to find handling and fingering limitations where there was "no residual functional capacity opinion from a treating doctor placing any limitations on . . . handling, or fingering." *Rosato v. Commissioner*, No. 1:11-cv-1977, 2012 WL 3731595, at * 3 (N.D. Ohio Aug. 7, 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. I find that the ALJ's factual finding regarding plaintiff's RFC is supported by substantial evidence.

---

[5]The Sixth Circuit considers the step two severity regulation as a "*de minimis* hurdle" intended to "screen out totally meritless claims." *Nejat v. Commissioner*, 359 F. App'x 574, 576 (6th Cir. 2009); *see also Corley v. Commissioner*, No. 98-3785, 1999 WL 970306, at * 1 (6th Cir. Oct. 14, 1999) ("The ALJ did not err in finding that a severe impairment can exist without finding that a significant limitation and disability exist."). "A claimant's severe impairment may or may not affect [] her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Commissioner*, 217 F. App'x at 429 (citation and internal quotation omitted).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   January 20, 2015          /s/  Phillip J. Green
                                   United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).